## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50383

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

CHARLES CAMPBELL,

  Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-623

Before DENNIS,* CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Before the court is a § 2255 motion filed by Charles Campbell. He argues that his sentence is unconstitutional because neither his two previous burglary convictions nor his two previous robbery convictions are violent felonies under the Armed Career Criminal Act (ACCA). We reject both arguments.

---

* Concurring in the judgment only.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50383

## I.

In 2007, a jury convicted Campbell for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The sentencing court imposed an enhancement under the ACCA based on four prior violent felony convictions. It found that Campbell's two Texas burglary convictions fell within the ACCA's enumerated-offenses clause and that his two Texas robbery convictions fell within the ACCA's residual clause. Campbell was sentenced to 210 months of imprisonment followed by five years of supervised release.[1]

Campbell filed three unsuccessful § 2255 motions in 2010. The first was rejected as untimely, while the latter two were rejected as improper successive petitions. Then, in 2015, the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague in violation of the Fifth Amendment. *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). The following year, the Court concluded that its holding in *Johnson* announced a new rule of substantive law that could be applied retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Campbell then received permission to file a fourth § 2255 petition, arguing "that in light of *Johnson*, his prior Texas convictions for robbery and robbery with assault no longer qualify as violent felonies under the ACCA."

That is one of the issues to resolve here, but there is also a second question. In 2018, while Campbell's § 2255 motion based on the robbery convictions was pending, this court decided in *United States v. Herrold* that no Texas burglary conviction can qualify as a violent felony under the ACCA's

---

[1] Although Campbell was released from prison on July 19, 2019, his petition continues to present a live case or controversy because, if Campbell does not qualify as a career offender under the ACCA, the maximum term of supervised release which could have been imposed for this Class C felony conviction would have been three years. 18 U.S.C. § 3583(b)(2).

enumerated-offenses clause. 883 F.3d 517, 537 (5th Cir. 2018) (en banc). The government conceded that *Herrold* prevented Campbell's burglary convictions from qualifying as violent felonies under the enumerated-offenses clause.[2] After *Herrold*, Campbell moved this court to expand the certificate of appealability granted by the district court to consider whether his burglary convictions continue to qualify as ACCA predicate offenses. This court granted the motion, but specifically instructed the parties to address whether this court has jurisdiction to entertain the burglary argument in light of the rules governing successive habeas applications.

After reviewing those arguments under recent circuit precedent, we conclude that we lack jurisdiction to consider Campbell's collateral attack on the use of his burglary convictions to enhance his sentence. We address that part of the petition before addressing Campbell's robbery convictions.

## II.

This court reviews a legal challenge to an ACCA-enhanced sentence de novo. *United States v. Fuller*, 453 F.3d 274, 278 (5th Cir. 2006). The defendant bears the burden to prove he is entitled to relief when collaterally attacking the judgment. *Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971).

## III.

"If the district court did not have jurisdiction to reach the merits, naturally, we cannot reach the merits on appeal." *United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018), *as revised* (Aug. 14, 2018). "A second or successive habeas application must meet strict procedural requirements before a district

---

[2] The Supreme Court subsequently granted certiorari in *Herrold*, vacated the judgment, and remanded for further proceedings in light of its decision in *Quarles v. United States*, 139 S. Ct. 1872 (2019). *United States v. Herrold*, No. 17-1445, 2019 WL 2493911, at *1 (U.S. June 17, 2019). This court is currently reconsidering *Herrold* en banc.

court can properly reach the merits of the application." *Id.* Among other things, the prisoner must prove that his claim is based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2).

Plainly, *Herrold* cannot supply this basis, since our *Herrold* decision has been vacated by the Supreme Court and no longer exists. But Campbell also attempts to base his successive habeas motion on *Johnson*. Campbell can only rely on *Johnson*, however, if he can show "that it was more likely than not that he was sentenced under the residual clause." *United States v. Clay*, 921 F.3d 550, 559 (5th Cir. 2019), *as revised* (Apr. 25, 2019). Campbell cannot make that showing.

Both the government and Campbell agree that the sentencing court found Campbell's burglary convictions were violent felonies under the enumerated-offenses clause of the ACCA, not under the residual clause. But Campbell's burglary convictions would also have counted as violent felonies under the residual clause. So Campbell argues that, before he would have been entitled to relief from the ACCA enhancement, he needed to show that the convictions did not qualify under *either* the enumerated-offenses clause *or* the residual clause. In Campbell's view, his § 2255 motion relies as much on *Johnson* as it does on *Herrold*.

Our circuit has rejected such an attenuated reading of the statute. That a defendant's prior conviction would have also been considered a violent felony under the residual clause is insufficient by itself to show that the sentencing court "more likely than not" relied on the residual clause. *See Clay*, 921 F.3d at 558. The statute requires more, after all, than "a theoretical possibility." *Wiese*, 896 F.3d at 726. To determine potential reliance on the residual clause, we look at the sentencing record "for direct evidence of a sentence," and we look

at "the relevant background legal environment that existed at the time of the defendant's sentencing" that may have informed the sentencing court's decision. *Id.* at 725 (cleaned up).

This inquiry is sometimes complicated by the common pre-*Johnson* practice of sentencing courts not to specify which clause of the ACCA applied to which predicate violent felony. *See, e.g.*, *id.* ("[T]he sentencing judge did not make any statement as to which clause was used for the sentencing enhancement. . . ."); *Clay*, 921 F.3d at 556 ("[T]here was no occasion for the sentencing court to clarify how the requisite 'violent felonies' were tabulated."); *United States v. Winterroth*, 759 F. App'x 299, 302 (5th Cir. 2019) (per curiam) ("[T]he district court said nothing at sentencing as to whether it considered Winterroth's prior Texas burglary convictions to be ACCA predicates as the enumerated offense of burglary or to be violent felonies under § 924(e)'s residual clause.").

But we may more easily conclude that the residual clause was not in play where, as in this case, the sentencing court explicitly relied on the enumerated-offenses clause and the court's conclusion that the felony convictions qualified as violent felonies under that clause was indisputably correct at the time it was made. Again, Campbell concedes that the sentencing court "stated that Campbell's Texas burglary convictions . . . fell under the . . . enumerated-offenses clause." And, as if to make its reliance on that clause doubly obvious, the court cited five different Fifth Circuit opinions at sentencing, all of which compare the state burglary statute to the generic offense of burglary under the ACCA, as well as *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court case that first espoused the categorical approach. Not one of these cases mentions the residual clause.

No. 17-50383

Moreover, at the time of Campbell's sentencing, it was clear that this court classified the Texas burglary offenses as generic "burglary" under the ACCA's enumerated-offenses clause. *See United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *United States v. Stone*, 72 F. App'x 149, 150 (5th Cir. 2003) (per curiam). Looking to the sentencing record and the relevant background legal environment at the time of sentencing, Campbell has not proven that the sentencing court more likely than not relied on the residual clause. As such, we lack jurisdiction to consider his successive § 2255 motion with regard to the burglary convictions.

## IV.

We turn now to Campbell's robbery convictions. As explained above, the district court explicitly relied on the residual clause of the ACCA in concluding that the two robbery convictions qualify as violent felonies. Campbell has shown, then, that it is "more likely than not" that he was sentenced under the residual clause and that his successive § 2255 motion relies on *Johnson. See Clay*, 921 F.3d at 559. But that does not end the matter. It remains for us to decide whether the district court's reliance on the residual clause was harmless. If the robbery convictions continue to justify the ACCA enhancement because they qualify as violent felonies under a different clause of the ACCA, then relief to Campbell must be denied.

## A.

The ACCA defines a "violent felony," in relevant part, as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

6

> (ii) is burglary, arson, or extortion, involves use of
> explosives, or *otherwise involves conduct that presents*
> *a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion of § 924(e)(2)(B)(ii) is the "residual clause," which has been struck down as unconstitutional. And robbery is not listed as an enumerated offense in § 924(e)(2)(B)(ii). So the only question is whether the version of the Texas robbery statute under which Campbell was twice convicted qualifies under the "elements clause." § 924(e)(2)(B)(i). That is, does the Texas statute "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another". *Id.*

To determine whether Campbell's past robbery convictions qualify under the elements clause, we apply the "categorical approach." *Descamps v. United States*, 570 U.S. 254, 257 (2013).[3] Under that approach, we "focus solely on whether the elements of the crime of conviction include the use of force," paying no attention to the particular facts behind Campbell's convictions. *United States v. Burris*, 920 F.3d 942, 947 (5th Cir. 2019) (cleaned up). "[I]f the least culpable conduct covered by [the statute at issue] requires the use, attempted use, or threatened use of physical force, [the statute] is a violent felony." *Id.*

---

[3] If the Texas robbery statute under which Campbell was convicted were "divisible," then we would instead apply what is termed the "modified categorical approach." *Descamps*, 570 U.S. at 257. A divisible statute sets forth one or more elements of the offense in the alternative. *Id.* Notably, a statute is not divisible simply because it identifies different means of committing the same offense. *Id.* at 274. In determining whether a statute is divisible into multiple offenses with distinct elements or instead states differing ways of committing the same offense, a state court decision that "definitively answers the question" is dispositive. *Mathis*, 136 S. Ct. at 2256. Because the Texas Court of Criminal Appeals has already determined that Article 1408 "defines but one offense," *Barber v. State*, 258 S.W.2d 87, 89 (Tex. Crim. App. 1953), we easily reach the threshold conclusion that the categorical approach applies. *See Mathis*, 136 S. Ct. at 2256.

No. 17-50383

The Supreme Court has defined the required level of force to qualify as a violent felony under this definition as "force capable of causing physical pain or injury." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010). This level of force is something more than the common-law definition of force, which could be "satisfied by even the slightest offensive touching." *Id.* at 139. The use of force necessary to commit robbery at common law is adequate, meaning that the ACCA "encompasses robbery offenses that require the criminal to overcome the victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 550 (2019). It makes no difference whether the force is applied directly or indirectly (for example, by poisoning). *See United States v. Reyes-Contreras*, 910 F.3d 169, 182 (5th Cir. 2018) (en banc) (applying *United States v. Castleman*, 572 U.S. 157, 162–68 (2014), and overruling Circuit precedent). "[R]obbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle." *Stokeling*, 139 S. Ct. at 553. And "[t]he altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself capable of causing physical pain or injury." *Id.* (quotation omitted).

In short, the degree of force required by the elements clause "entails more force than the slightest offensive touching, but does not require any particular degree of likelihood or probability that the force used will cause pain or injury; only potentiality." *Burris*, 920 F.3d at 955 (quotations omitted). The emphasis is on "capable." *Id.* "Even minor uses of force—including hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling—that lead to minor forms of injury, such as a cut, abrasion, or bruise, qualify as 'physical force' under" the ACCA. *Id.*

8

No. 17-50383

## B.

Campbell was twice convicted of robbery under Article 1408 of the 1925 Texas Penal Code. At the time Campbell was convicted, the statute provided:

> **Robbery.—** If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use[, he shall be guilty of robbery.]

Tex. Crim. Stat. art. 1408 (1925). "Assault," defined in a separate section of the Code, includes "[t]he use of any unlawful violence upon the person of another with intent to injure him," "whatever be the means or the degree of violence used." *Id.* at art. 1138. Article 1140 notes that the "means" of violence upon the person includes any act, including "spitting in the face or otherwise," so long as it is "capable of inflicting an injury." And "injury" itself is broadly defined—specifically, it "may be either bodily pain, constraint, [or] a sense of shame or other disagreeable emotion of the mind." *Id.* at art. 1139.

Notwithstanding this potentially broad language, however, the case law makes clear that the level of force required by Article 1408 has been interpreted more strictly. Courts discussing robbery during the relevant time emphasized the presence of some "violence or threat of violence to obtain property" as the main distinguishing factor between robbery and theft. *Woods v. State*, 220 S.W.2d 644, 646 (Tex. Crim. App. 1949); *see also Jones v. State*, 467 S.W.2d 453, 454 (Tex. Crim. App. 1971); *Cassidy v. State*, 324 S.W.2d 857, 858–59 (Tex. Crim. App. 1959); *Harris v. State*, 39 S.W.2d 888, 890 (Tex. Crim. App. 1931). Nevertheless, the amount of force used was "immaterial so long as it amount[ed] to some kind of assault, violence, or putting in fear" and was "sufficient to compel one to part with his property." *Davis v. State*, 429 S.W.2d 459, 460 (Tex. Crim. App. 1968) (quotation omitted); *see also Alsobrook v. State*, 115 S.W.2d 668, 671 (Tex. Crim. App. 1938); *Rylee v. State*, 236 S.W. 744, 745

9

No. 17-50383

(Tex. Crim. App. 1922).[4] The amount of force was alternatively articulated as "sufficient to overcome resistance of the assaulted party." *Gonzales v. State*, 126 S.W.2d 492, 493 (Tex. Crim. App. 1939). Texas courts contrasted these circumstances with sudden purse-snatchings or pick-pocketing, where the victim has no opportunity to resist and/or lacks awareness of what is transpiring. *See Harris*, 39 S.W.2d at 889–90; *Johnson v. State*, 32 S.W. 537, 538 (Tex. Crim. App. 1895).

At its most broad, Texas courts convicted a defendant of robbery under Article 1408 when the "assaultive" physical conduct of the defendant involved minimal force used on a weakened or cooperative victim. For example, the Texas Court of Criminal Appeals found that a robbery conviction was warranted when a victim was commanded to get out of his car by a stranger he had agreed to take home, was held by two or three others who had been following behind, and then had money taken from him without any resistance because the victim believed it would be futile. *Burlund v. State*, 90 S.W.2d 260, 261 (Tex. Crim. App. 1935); *see also Williams*, 102 S.W. 1134, 1135 (Tex. Crim. App. 1907) (robbery conviction appropriate where perpetrator restrained a vomiting victim and stole his money by forcibly reaching into his pockets over the victim's resistance).

In addition, Texas courts permitted robbery charges based on a threat when it created fear in the victim that was "likely to induce a person to part with his property against his will." *Cranford v. State*, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964). That standard was met when the victim reasonably believed he would be injured if he did not comply—even where there was no express threat and no weapon was present. *Horn v. State*, 230 S.W. 693, 694 (Tex. Crim.

---

[4] Prior iterations of the Texas Penal Code were worded identically to the 1925 Code. *See* Tex. Crim. Stat. art. 1327 (1911); Tex. Crim. Stat. art. 856 (1895).

No. 17-50383

App. 1921); *see also Welch v. State*, 880 S.W.2d 225, 226–27 (Tex. Crim. App. 1994) (discussing the older statute); *and see Peebles v. State*, 134 S.W.2d 298, 299 (Tex. Crim. App. 1939) (no robbery where threat could not reasonably have put the victim in fear).

### C.

The level of force required by Article 1408 satisfies generic robbery. To summarize, the "use of force" involved under Article 1408, when physical, entailed the use of force with sufficient power to constrain the victim and forcibly remove an item against the victim's will or in an attempt to maintain possession of the item. When based on a threat of force, the threat must have been of sufficient seriousness to put the victim in reasonable fear or belief that he would be injured unless he gave up possession of the item. In other words, taking another's property by mere unwanted contact—e.g., purse-snatchings or pickpocketing—would not do. *Jones*, 467 S.W.2d at 454 ("The mere snatching of money from another's hand is not robbery, but is theft from the person."); *see also Crawford v. State*, 509 S.W.2d 582, 584 (Tex. Crim. App. 1974); *Alsobrook*, 115 S.W.2d at 671 ("The actual or threatened violence to the person antecedent to the robbery is a distinguishing element between robbery and theft.").

In *Burris*, we held that the modern version of Texas robbery requires the use, attempted use, or threatened use of physical force. 920 F.3d at 948. There are two ways of violating the modern statute: (1) robbery-by-threat, which requires the defendant, in the course of committing a theft, to intentionally or knowingly threaten or place another in fear of bodily injury or death; and (2) robbery-by-injury, which requires the defendant, in the course of committing a theft, to intentionally, knowingly, or recklessly cause bodily injury to another. Tex. Penal Code § 29.02(a). For robbery-by-threat, it is only necessary that the

11

defendant "is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear." *Burris*, 920 F.3d at 955 (quoting *Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011)). For robbery-by-injury, "relatively minor physical contacts" are sufficient "so long as they constitute more than mere offensive touching." *Id.* at 956 (quoting *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989)).

Texas courts have described Texas's current robbery statute as broader than Article 1408. *Lightner v. State*, 535 S.W.2d 176, 177 (Tex. Crim. App. 1976). If the current version of robbery qualifies as a violent felony, it seems probable that the narrower range of conduct proscribed by the older version should as well. Indeed, we find that to be the case.

Like the modern version of Texas robbery analyzed in *Burris*, Article 1408 robbery required a "physical struggle" or a confrontation between the robber and the victim. *See* 920 F.3d at 955–56. Even where no force was actually used on the victim, and where no explicit threat was made or weapon was present, conviction under the Article 1408 required that the victim reasonably feared injury if he did not comply. *See Horn*, 230 S.W. at 694. "The fear must be of such nature as in reason and common experience is likely to induce a person to part with his property against his will." *Cranford*, 377 S.W.2d at 958. Intimidation which is likely to induce a person to part with their property creates the potential for violence which is sufficient under *Stokeling*. *See* 139 S. Ct. at 554. Force that includes the "potentiality" of causing physical pain or injury encompasses conduct which is reasonably likely to induce a person to part with property against his will. *Cf. Burris*, 920 F.3d at 956.

It is irrelevant that conviction under Article 1408 did not require harm to the victim. As explained in *Stokeling*, "[t]he altercation need not cause pain or injury or even be prolonged" to qualify as the use of physical force. 139 S.

Ct. at 553. Beyond the slightest offensive touching, no particular degree of force or injury is required under the elements clause. It is instead the *potential* for injury created by the defendant's conduct that is dispositive. *Burris*, 920 F.3d at 954. We agree with the government that the taking of property from a person against their will, in a manner "sufficient to overcome resistance of the assaulted party," *Gonzales*, 126 S.W.2d at 493, is at least "susceptible" to causing pain or injury, *Stokeling*, 139 S. Ct. at 554.

Campbell argues that the minimum conduct criminalized by Article 1408 was satisfied by the slightest offensive touching, without a physical contest capable of causing physical pain or injury. *See Davis*, 429 S.W.2d at 460 ("'The degree of force used is immaterial so long as it amounts to some kind of assault, violence, or putting in fear, and is sufficient to compel one to part with his property.'" (quoting *Rylee*, 236 S.W. at 745)). He urges that slight offensive touching that causes an emotional, not physical, injury does not satisfy the elements clause of the ACCA.

If we analyzed the text of Article 1408 in a vacuum, we might be inclined to agree with Campbell. After all, the statutory definition of "assault" suggests that any offensive act, including spitting in the face, which creates only a sense of shame or other disagreeable emotion in the victim, would constitute sufficient force for a robbery conviction under Article 1408. *See* Tex. Crim. Stat. arts. 1339, 1140. That sounds a lot like the "slightest offensive touching" which constituted force at common law, and which the Supreme Court in *Curtis Johnson* declared inadequate to constitute a violent felony under the ACCA. 559 U.S. at 138.

But we do not interpret the statute in a vacuum. We have instead instructed defendants such as Campbell that they must show more than a "theoretical possibility" that Texas would have applied Article 1408 to such

conduct. *Reyes-Contreras*, 910 F.3d at 184–85. Campbell's burden is to show "a realistic probability" that Article 1408 applied to the conduct described above. *Id.* Defendants must do that with cases. *Id.* But Campbell has not identified a single instance in which a conviction under Article 1408 was premised on conduct which would not satisfy the generic definition of robbery. And "[w]ithout supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary realistic probability." *Id.* (quotation omitted). This logic has added force where, as in this case, the statute at issue is no longer on the books, meaning that there will never be another state court conviction under Article 1408. The cases discussed above represent the relevant universe of case law on the statute. Because they never applied Article 1408 in a manner that is inconsistent with our interpretation of a violent felony under the ACCA, Campbell cannot show a realistic probability that they would have applied Article 1408 to the slightest offensive touching.

## V.

For the foregoing reasons, we hold that Campbell's § 2255 motion challenging the use of his burglary convictions to enhance his sentence is DISMISSED for lack of jurisdiction. His § 2255 motion challenging the use of his robbery convictions is DENIED. The sentencing enhancement was appropriate.

14